IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | : C.A. NO. 00-570ML |
| | : CR. No. 97-045ML |
| vs. | : |
| | : |
| ALBERT VERRECCHIA, | : |
| Petitioner/Movant | : |

**APPLICATION FOR CERTIFICATE OF APPEALABILITY**

**ALBERT VERRECCHIA** hereby submits the following as his application for certificate of appealability (hereinafter abbreviated "COA").

**STANDARDS FOR GRANTING A COA**

28 U.S.C. 2253(c)(1) reads, in pertinent part, as follows:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or (B) the final order in a proceeding under section 2255.

28 U.S.C. 2253(c)(2) reads, in pertinent part, as follows:

> A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

***Miller-El vs. Cockrell***, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), which set standards for issuance of a COA, reads, in pertinent part, as follows:

> The COA determination under 2253(c) requires an overview of the claims in the habeas corpus petition and the general assessment of their merits. We look to the district court's

> application of the AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. **This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.**
>
> To that end, our opinion in ***Slack***[1] held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in

[1] ***Slack vs. McDaniel***, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) defines the standard as follows:

> We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching a prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in it's procedural ruling. 529 U.S. at 482, 120 S.Ct. at 603

Where, as here, the movant alleges the district court erred by failing to hold an evidentiary hearing on a 2255 motion to vacate, the application for the certificate of appealability must show "the soundness of the procedural ruling is debatable, and that the underlying constitutional claim is also colorable." ***In re: William Smith***, 436 F3d 9 (1st Cir. 2006).

> ***Slack*** would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "has already failed in that endeavor." ***Barefoot***, supra at 893, n. 4.

In the present case, the district court erred when it failed to hold a hearing on claims of ineffective assistance of counsel for failure to present at trial and on appeal that the sentence was multiplicitous in violation of the double jeopardy clause of the Fifth Amendment. The underlying double jeopardy violation is at least "colorable" because the defendant in this case had uninterrupted possession of all twenty three firearms. It is well settled that possession of a firearm is a continuing offense which stops only when the possession stops. "Congress intended the crime of possession to refer to a course of conduct rather than individual acts of dominion…" ***United States v. Jones***, 403 F3d 604, 605 (8th Cir. 2005), ***United States v. Fleischli***, 305 F3d 643, 658 (7th Cir. 2002)["Possession of a firearm is a continuing offense which ceases only when the possession stops."], ***United States v. Finley***, 245 F3d 199, 207 (2d Cir. 2001),[possession of a shotgun is a continuing offense].

## I. THE STATUTE

**Rule 60(b). Relief from Judgment or Order**

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party, or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment

> has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3), not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not effect the finality of the judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant not personally notified as provided in Title 28, U.S.C. 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review, are abolished and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by independent action.

***Gonzalez vs. Crosby***, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) ruled that a motion for reconsideration under Rule 60(b) F.R.Civ.P. is not a second or successive habeas corpus petition provided the motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings."

In the instant case, Mr. Verrecchia filed an independent action attacking the integrity of the judgment denying the 2255 motion on the grounds that the district court did not hold a hearing on the 2255 motion even though the 2255 motion alleged the failure to present the double jeopardy/multiplicity claim was an objective, non-strategic error on the part of trial counsel and appellate counsel and a reasonable probability that but for the error, the result would have been different. Specifically, that defense counsel's objective errors caused the defendant to be sentenced to 150 months when the statutory maximum sentence was 120 months. Mr. Verrecchia also alleged the district court committed procedural error when it relied on the unsworn assertions of an AUSA in deciding the case.

**II. STATEMENT OF THE CASE**

On June 4, 1997, a Federal Grand Jury returned an indictment charging Albert Verrecchia with two counts of possession of firearms by a convicted felon in violation of 18 U.S.C. 922(g)(1) [Counts One and Two], possession of a sawed-off shotgun [Count Three], and possession of two pipe bombs [Count Four] in violation of 26 U.S.C. 5845(a) and 5861(d).

Counts One and Two occurred on the same date, and involved one seamless possession of firearms. "Possession of a firearm is a continuing offense which ceases when the possession stops." ***Fleischli, supra.***

On March 17, 1998, trial commenced before United States District Court Judge Mary M. Lisi, and a jury. On March 19, 1998, Mr. Verrecchia was convicted on Counts One and Two, but acquitted on Counts Three and Four.

On August 12, 1998, the United States District Court Judge imposed consecutive sentences of one hundred twenty (120) months' imprisonment on Count One and thirty (30) months' imprisonment on Count Two.

On November 19, 1999, the Court of Appeals affirmed. On appeal, the following issues were presented. First, the Sixth Amendment right to a unanimous verdict was violated by the district court's failure to give the jury an instruction to the effect that the jury had to be unanimous with respect to which firearm was possessed. Second, the prosecutor's closing argument misstated evidence, made references to uncharged conduct, vouched for the credibility of law enforcement witnesses, called the defendant a liar, and injected his personal opinion into the case. The latter issue was considered under the plain error standard because defense counsel failed to make a timely objection.

On November 16, 2000, Mr. Verrecchia filed a counseled 2255 motion. On March 21, 2001, the Government filed objections to the motion. On June 20, 2001, the United States District Court Judge denied the 2255 motion without a hearing. On August 23, 2001, the United States District Court Judge denied the application for certificate of appealability ["COA"].

On September 7, 2001, Mr. Verrecchia filed a counseled application for COA to the First Circuit Court of Appeals. On March 26, 2002, the First Circuit entered an order denying a COA.

On January 26, 2006, Mr. Verrecchia filed an independent action seeking relief from the final order denying the 2255 motion. On February 28, 2006, the district court issued a "show cause" order. On April 7, 2006, the government filed a response opposing the action. On July 23, 2007, the district court denied the independent action.

On September 18, 2007, Mr. Verrecchia filed a timely notice of appeal.

## III. CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

### A. CONSTITUTIONAL

The Fifth Amendment provides, in pertinent part, as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law...

*** *** *** ***

The Sixth Amendment provides, in pertinent part, as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

**B. STATUTES**

18 U.S.C. 922(g) reads, in pertinent part as follows:

> It shall be unlawful for any person--
>
> (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year...
>
> to ship or transport in interstate or foreign commerce or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce.
>
> *** *** *** ***

18 U.S.C. 3553(c)(1) reads, in pertinent part, as follows:

> Statement of reasons for imposing a sentence -- The court at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--
>
> (1) is of the kind and within the range described in section (a)(4), and that range exceeds 24 months, the reason for imposing

> a sentence at a particular point within the range.
>
> *** *** *** ***

28 U.S.C. 2255 reads, in pertinent part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court, which imposed the sentence to vacate, set aside, or correct the sentence.
>
> Unless the motion, and the files, and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate...
>
> An application for a writ of habeas corpus...shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

## IV. PROSECUTION VERSION OF THE OFFENSE BEHAVIOR

The facts of this case, which were summarized in the opinion of the Rhode Island Supreme Court in ***State vs. Verrecchia***, No. 99-458-C.A, are as follows:

> The undercover police detective testified that, after learning of **Verrecchia's role as the keeper of GNG's weapons, he asked Rossi (then a government informant) to arrange for Verrecchia to sell some of GNG's weapons**

> to an undercover police detective. Rossi testified that in a series of conversations with Verrecchia, he instructed him to sell some of the group's weapons to a fellow inmate, called "The Ghost" who would soon be released on bail. According to Rossi, Verrecchia readily agreed to do so. Thereafter, the detective testified, he contacted Verrecchia and identified himself as "The Ghost." The police recorded this conversation on tape. The detective recalled that Verrecchia said he had been expecting his call. He recounted that Verrecchia readily agreed to meet with him and discuss the proposed weapons sale. When they met, Verrecchia asked the detective to be more specific concerning the weapons he wished to buy because Verrecchia claimed to have a "coffin" full of weapons to choose from. Later that day they met again, but after Verrecchia delivered the weapons to the detective, the police immediately arrested him.

The prosecution version of the offense, which appears on pages one and two of the Presentence Investigation Report ["PSI"] is as follows.

In the spring of 1996, Michael Rossi, who had been arrested and held in connection with a series of burglaries, informed the Rhode Island State Police that Albert Verrecchia was in possession of a cache of firearms stored in a barn in Burrillville, Rhode Island.

Mr. Rossi agreed to introduce Mr. Verrecchia to an undercover state policeman. Mr. Rossi, who was in a state prison, met Mr. Verrecchia in the prison visiting room. Mr. Rossi told Mr. Verrecchia that a drug dealer known as the "Ghost" would be contacting Mr. Verrecchia to purchase guns.

On May 9, 1996, State Police Detective Sergeant Steven O'Donnell telephone Mr. Verrecchia, identified himself as "Ghost," and set up a meeting at the Dunkin Donuts parking lot in Johnston where Verrecchia and O'Donnell could discuss the gun transaction. At approximately 11:00 AM, Mr. Verrecchia met Sergeant O'Donnell in the parking lot. Mr. Verrecchia explained that he had many guns available and that the guns

were stored in a coffin. Sergeant O'Donnell stated that he wanted to buy an AK-47 and a Star .45 caliber pistol. Mr. Verrecchia and Sergeant O'Donnell agreed on a price of $1,000.00 for the two guns.

Sergeant O'Donnell and Mr. Verrecchia drove to Eastern Automotive & Body Company, at 19-A Buck Hill Road, Mr. Verrecchia's auto repair shop. From there, Mr. Verrecchia left in a brown tow truck to get the guns. Sergeant O'Donnell and Mr. Verrecchia agreed to meet at the parking lot of the Walmart on Plainfield Pike, in Cranston at 2:30 PM.

FBI Agents and a state trooper in an airplane followed Mr. Verrecchia as he drove to a barn off Main Street in the village of Harrisville in Burrillville. The police observed Mr. Verrecchia park in a Post Office parking lot, walk over to the barn, and go inside. A short time later, Mr. Verrecchia left the barn carrying a white cardboard box, which he put in the tow truck. Mr. Verrecchia drove to the Walmart parking lot, where he met Sergeant O'Donnell and gave him the box, which contained an AK-47. He also displayed a box containing a Star handgun. Sergeant O'Donnell approved the guns, and helped Mr. Verrecchia carry them to the trunk of the undercover car. When the guns were inside, Sergeant O'Donnell gave the arrest signal. Mr. Verrecchia was arrested, and taken to State Police Headquarters in Scituate, Rhode Island.

Following the arrest, the State Police obtained a search warrant for the barn where Mr. Verrecchia had picked up the guns. Lieutenant Brendan Doherty spoke to Mr. Verrecchia in the holding cell, informing him that they had a search warrant, and asking if the barn was booby trapped. Mr. Verrecchia said there were no guns other than the

ones in the coffin. He gave them the keys to the barn and the lock on the coffin where the guns were stored.

State Police and the Fire Marshal executed the search warrant. They found a locked coffin-like box, which contained twenty-one firearms, two pipe bombs, ammunition, holsters, face masks, wigs, etc.

**V. ASSERTIONS MADE IN THE 2255 MOTION**

Mr. Verrecchia's 2255 motion alleged constitutionally ineffective assistance of counsel in violation of the Sixth Amendment, but the foundation for the claim of ineffective assistance was the substantive claim that the 150 month sentence violated the double jeopardy clause of the Fifth Amendment because it imposed consecutive sentences for a single, seamless possession of one cache of firearms.

It is well settled that possession of a firearm is a continuing offense which stops only when the possession stops. "Congress intended the crime of possession to refer to a course of conduct rather than individual acts of dominion…" ***United States v. Jones***, 403 F3d 604, 605 (8th Cir. 2005), ***United States v. Fleischli***, 305 F3d 643, 658 (7th Cir. 2002)["Possession of a firearm is a continuing offense which ceases only when the possession stops."], ***United States v. Finley***, 245 F3d 199, 207 (2d Cir. 2001),[possession of a shotgun is a continuing offense].

The facts of this case point to an uninterrupted, seamless possession of twenty three firearms. The atomization of this single offense into two offenses violates the prohibition against multiple prosecution and/or punishment for the same crime.

At pretrial proceedings, Mr. Verrecchia was represented by Edward Roy, Esquire, whose legal representation fell below professional norms when he failed to recognize

Counts One and Two were multiplicitous, and then failed to file appropriate and timely pretrial motions.[2] Appellate counsel was ineffective for arguing the counts were duplicitous when he should have been arguing the counts were multiplicitous.

Here, Counts One and Two arbitrarily subdivide into two separate counts a single, seamless possession of firearms by a convicted felon in violation of 18 U.S.C. 922(g) on the same date. As stated in previous paragraphs, a single, seamless possession of firearms constitutes one offense for purposes of 18 U.S.C. 922(g). ***United States v. Jones***, 403 F3d 604, 605 (8th Cir. 2005), ***United States v. Fleischli***, 305 F3d 643, 658 (7th Cir. 2002)["Possession of a firearm is a continuing offense which ceases only when the possession stops."], ***United States v. Finley***, 245 F3d 199, 207 (2d Cir. 2001),[possession of a shotgun is a continuing offense].

Although there appears to be no strategic reason for not making a timely motion to dismiss Count One or Count Two on grounds of multiplicity, for failing to object to the 150 month sentence on grounds of double jeopardy, or the failure to raise the multiplicity/double jeopardy issues on direct appeal, the district court should have held a hearing to determine why counsel did not make the appropriate and timely objections or present the issue on appeal. The failure on counsel's part to recognize and present the issues resulted in a sentence at least thirty (30) months longer than the sentence authorized by statute.

Accordingly, the Court should have held the hearing requested in the 2255 motion, following which it should have vacated one of the convictions, and held a prompt resentencing.

---

[2] An indictment is multiplicitous if it charges the same crime in more than one count.

**VI. THE DISTRICT COURT'S DECISION TO DENY THE 2255 MOTION WITHOUT A HEARING WAS PROCEDURALLY IMPROPER**

28 U.S.C. 2255 reads, in pertinent part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court, which imposed the sentence to vacate, set aside, or correct the sentence.
>
> Unless the motion, and the files, and the records of the case **conclusively show** that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

*** *** *** ***

***Solis vs. United States***, 252 F3d 289, 294 (3d Cir. 2001) states:

> We reject the Government's position. Section 2255 requires that a hearing precede any District Court determination of the disputed issue of fact concerning petitioner's entitlement to relief...Adoption of the Government's position may cut corners in the name of efficiency but it may be at the expense of important procedural rights.

Sworn or unsworn statements of an Assistant United States Attorney are entitled to no consideration when making the decision to grant or deny a hearing on a post conviction motion. ***United States vs. White***. 366 F3d 291, 300 (4th Cir. 2004)[AUSA's

unsworn statement is not evidence], ***United States vs. Gripper***, 122 Fed. Appx. 15 (4th Cir. 2005)[same].[3]

In ***Blackledge vs. Allison***, at 431 U.S. 70, 97 S.Ct. 1627, the Court recommended that the District Court apply the same standards to a 2255 motion as it would to a motion for summary judgment:

> This is not to say that every set of allegations not on its face without merit entitles a habeas corpus petitioner to an evidentiary hearing. As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have a sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment. Upon remand, the warden will be free to make such a motion, supporting it with whatever proof he wishes to attach. If he chooses to do so, Allison will then be required either to produce some contrary proof indicating that there is a genuine issue of fact to be resolved by the district court or to explain his inability to produce such proof. Fed. Rules Civ. Proc. 56(e)(f).
>
> Moreover, as is now expressly provided in the Rules Governing Habeas Corpus Cases, the district court judge...may employ a variety of measures in an effort to avoid the need for an evidentiary hearing. Under Rule 6, a party may request that discovery take place, and “there may be instances in which discovery would be appropriate...Under Rule 7, the judge can direct expansion of the record to include any appropriate materials that “enable the judge to dispose of some habeas petitions not dismissed on the pleadings without the time and expense required for an evidentiary hearing.”
>
> In short, it may turn out upon remand that a full evidentiary

[3] ***Machibroda vs. United States***, 368 U.S. 487, 495-96 (1962), ***United States vs. Kelly***, 790 F2d 130 (DC Cir. 1986)[sworn or unsworn statements by AUSA may not be used as substitute for an evidentiary hearing in connection with a post conviction motion]. ***Taylor vs. United States***, 487 F2d 307 (2d Cir. 1973)[held that sworn statements of an AUSA cannot defeat the movant's right to a hearing in connection with a post conviction motion. ***Bender vs. United States***, 387 F2d 628 (1st Cir. 1967)[sworn statement from attorney cannot defeat right to an evidentiary hearing], ***Lindhorst vs. United States***, 585 F2d 361, 365 (8th Cir. 1978), ***Brown vs. Johnson***, 224 F3d 461 (5th Cir. 2000)

> hearing is not required. But Allison is "entitled to careful consideration and plenary processing of his claim, including full opportunity for presentation of the relevant facts."
> ***Harris vs. Nelson***, 394 U.S. at 298, 89 S.Ct. at 1090
> ***Blackledge vs. Allison,*** at 431 U.S. 80-81, 97 S.Ct. 1632-1633.

In the present case, the government submitted no evidence supporting the unsworn assertion that "This is not a single act of possession, but two acts of possession."

The district court's reliance on the unsworn assertions of a government official was procedurally improper, and it warrants blanket relief from the order denying the 2255 motion insofar as it alleges ineffective assistance of counsel for failure to object to the indictment on grounds of multiplicity and failure to object to the sentence on grounds of double jeopardy and the related failure to appeal the multiplicity/double jeopardy issues.

**VII. CONCLUSION**

The COA should be granted. The order denying the independent action should be vacated. The order denying the 2255 motion should be vacated. The district court should grant discovery and hold an evidentiary hearing on the facts alleged in the 2255 motion.

s/Cheryl J. Sturm
Cheryl J. Sturm
Attorney-At-Law
387 Ring Road
Chadds Ford, PA 19317
484/ 771-2000
(Appellate Counsel)

s/S.Paul Ryan
S. Paul Ryan
Attorney-at-Law
670 Willett Avenue
East Providence, R.I. 02915
401/437-0660
(local counsel)

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 10th day of October, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney of record:

Zechariah Chafee
U.S. Attorney's office
Fleet Center
One Kennedy Plaza
8th Floor
Providence, Rhode Island 02903

s/S. Paul Ryan
S. Paul Ryan